# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

BRUNO PROJECT RESCUE, INC., a 501(c)(3) corporation; ANNIE'S FAITH FOUNDATION, a 501(c)(3) corporation; CARIBBEAN CANINE CONNECTION CO., a 501(c)(3) corporation; ARUBA FLIGHT VOLUNTEERS INC., a 501(c)(3) corporation, d/b/a New Life for Paws Foundation; POTCAKE PLACE K9 RESCUE (USA) INC., a 501(c)(3) corporation; SAVE THE SATOS, a 501(c)(3) corporation,

Plaintiffs-Appellants,

v.

CENTERS FOR DISEASE CONTROL AND PREVENTION; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; JIM O'NEILL, in the official capacity as Director of the Centers for Disease Control and Prevention,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Massachusetts

## BRIEF FOR APPELLEES

BRETT A. SHUMATE
  *Assistant Attorney General*

LEAH B. FOLEY
  *United States Attorney*

THOMAS PULHAM
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5446*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ..................................................................1

STATEMENT OF THE ISSUE.......................................................................1

STATEMENT OF THE CASE .......................................................................2

    A.    Statutory and Regulatory Background.........................................2

    B.    The CDC's Canine Rabies Rule...................................................3

    C.    Prior Proceedings........................................................................8

SUMMARY OF ARGUMENT.......................................................................9

STANDARD OF REVIEW ......................................................................... 10

ARGUMENT ............................................................................................. 11

I.    The CDC Has Statutory Authority to Issue the Canine Rabies Rule................ 11

    A.    Section 264(a) Expressly Authorizes Inspection Measures, and the Age Requirement Facilitates Accurate Inspections ...................................11

    B.    Plaintiffs' Counterarguments Are Contrary to § 264(a)'s Plain Text and Longstanding Agency Practice ............................................................14

II.    The CDC Fully Justified the Canine Rabies Rule.................................................. 21

    A.    The CDC Reasonably Found That the Age Requirement Was Necessary to Prevent the Reintroduction and Spread of Canine Rabies.................................................................................................21

    B.    Plaintiffs' Counterarguments Disregard Important Aspects of the CDC's Reasoned Decision ...........................................................................25

CONCLUSION ......................................................................................... 32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                          **Page(s)**

*Acosta v. Local Union 26, UNITE HERE,*
895 F.3d 141 (1st Cir. 2018) ........................................................ 13

*Alabama Ass'n of Realtors v. HHS,*
594 U.S. 758 (2021) ............................................................ passim

*Alam & Sarker, LLC v. United States,*
113 F.4th 153 (1st Cir. 2024) ...................................................... 10

*Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
601 U.S. 42 (2024) ................................................................ 20

*Department of Homeland Sec. v. Regents of the Univ. of Cal.,*
591 U.S. 1 (2020) ................................................................. 30

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211 (2016) ........................................................... 30, 31

*Federal Commc'ns Comm'n v. Prometheus Radio Project,*
592 U.S. 414 (2021) ........................................................... 21, 29

*Federal Energy Regul. Comm'n v. Electric Power Supply Ass'n,*
577 U.S. 260 (2016) .............................................................. 28

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.,*
534 U.S. 124 (2001) .............................................................. 20

*Louisiana v. Mathews,*
427 F. Supp. 174 (E.D. La. 1977) .............................................. 3, 17

*McAfee v. U.S. FDA,*
36 F.4th 272 (D.C. Cir. 2022) ................................................... 18

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ........................................................... 21, 28

*National Fuel Gas Supply Corp. v. Federal Energy Regul. Comm'n,*
468 F.3d 831 (D.C. Cir. 2006) ............................................... 29, 30

*Royal Potcake Rescue v. CDC*, No. 24-cv-1909,
2025 WL 2780335 (M.D. Fla. Sep. 30, 2025) ............................................................ 11

*Seven Cnty. Infrastructure Coal. v. Eagle County*,
605 U.S. 168 (2025) ........................................................................................................ 16

*Stilwell v. Office of Thrift Supervision*,
569 F.3d 514 (D.C. Cir. 2009) ................................................................................ 29, 30

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*,
5 F.4th 666 (6th Cir. 2021) ....................................................................................... 12

*U.S. Sportsmen's All. Found. v. CDC*,
--- F.4th ---, No. 25-1473, 2026 WL 412318 (6th Cir. Feb. 13, 2026) .............. passim

**Statutes:**

Pub. L. No. 102-531, § 312, 106 Stat. 3469 (1992) .......................................................17

5 U.S.C. § 706(2)(A) ...................................................................................................... 11

5 U.S.C. § 706(2)(C) ...................................................................................................... 11

20 U.S.C. § 3508(b) ........................................................................................................ 2

28 U.S.C. § 1291 ............................................................................................................. 1

28 U.S.C. § 1331 ............................................................................................................. 1

42 U.S.C. § 264(a) ...................................................................................................passim

42 U.S.C. § 265 ............................................................................................................. 19

**Regulatory Materials:**

9 C.F.R. pt. 2 ................................................................................................................. 24

21 C.F.R. pt. 118 ........................................................................................................... 18

21 C.F.R. pt. 606 ........................................................................................................... 18

21 C.F.R. pt. 630 ........................................................................................................... 18

21 C.F.R. § 1240.30 ........................................................................................................ 3

21 C.F.R. § 1250.27 ............................................................................ 18

42 C.F.R. § 70.2 ................................................................................... 3

42 C.F.R. § 70.10 ................................................................................. 18

42 C.F.R. § 71.51 ................................................................................. 4

42 C.F.R. § 71.51(f)(1) ........................................................................ 5

42 C.F.R. § 71.51(i)(1) ..................................................................... 5, 6

42 C.F.R. § 71.51(a) (1985) ....................................................... 4, 14, 19

42 C.F.R. § 71.51(c) (1985) ....................................................... 4, 14, 19

42 C.F.R. § 71.51(c)(1)(i) (1985) ...................................................... 4

42 C.F.R. § 71.51(c)(1)(ii) (1985) ..................................................... 4

**Other Authorities:**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 192-93 (2012).................................................................15

*Ban on Sale and Distribution of Small Turtles,*
40 Fed. Reg. 22,543 (May 23, 1975) ....................................... 3, 14, 17

CDC, *High-Risk Countries for Dog Rabies* (May 31, 2024),
https://perma.cc/9RHH-K6FY ...........................................................4

*Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats,*
89 Fed. Reg. 41,726 (May 13, 2024) ..................................... passim

*Control of Communicable Diseases; Restrictions on African Rodents, Prairie Dogs, and Certain Other Animals,*
68 Fed. Reg. 62,353 (Nov. 4, 2003) ........................................ 3, 17

*Foreign Quarantine,*
50 Fed. Reg. 1516 (Jan. 11, 1985) ...........................................4

*Inspect,* The American Heritage Dictionary of the English
Language 908 (5th ed. 2018) ............................................................13

*Inspection*, Funk & Wagnalls New Standard Dictionary of the
English Language 1271 (1941) ...........................................................................13

*Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists*,
85 Fed. Reg. 17,060 (Mar. 26, 2020) ............................................................. 19

*Reorganization Plan No. 3 of 1966*,
31 Fed. Reg. 8855 (June 25, 1966) .................................................................. 2

*Revision of Chapter*,
21 Fed. Reg. 9805 (Dec. 12, 1956) ........................................................... 4, 14

*Requirements Affecting Raw Milk for Human Consumption in Interstate Commerce*,
52 Fed. Reg. 29,509 (Aug. 10, 1987) ............................................................ 18

*Temporary Suspension of Dogs Entering the United States From High-Risk Rabies Countries*,
86 Fed. Reg. 32,041 (June 16, 2021) ............................................................ 19

# STATEMENT OF JURISDICTION

In this action brought under the Administrative Procedure Act (APA), plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. App. 153.[1] The district court granted summary judgment to the government and entered final judgment on June 18, 2025. Add. 16. Plaintiffs filed a timely notice of appeal on August 16, 2025. App. 24. This Court has jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUE

For 70 years, federal regulations have governed the entry of dogs into the United States to prevent the spread of the deadly canine rabies virus. This case involves incremental updates that the Centers for Disease Control and Prevention (CDC) made to the regulations in response to instances where rabid dogs with falsified documentation were imported into the country. In the Canine Rabies Rule, the CDC adopted an age requirement to enable inspectors to more accurately identify dogs infected with rabies and, where necessary, to verify that dogs are adequately vaccinated against rabies. The question presented is:

Whether the district court correctly determined that the challenged requirement falls within the CDC's statutory authority and was reasonably explained.

---

[1] This brief uses "App. __" to cite to pages of the appendix. This brief uses "Add. __" to cite to pages of the addendum at the end of the opening brief.

## STATEMENT OF THE CASE

### A.        Statutory and Regulatory Background

The Public Health Service Act authorizes the Secretary of Health and Human Services (HHS) to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." 42 U.S.C. § 264(a). The next sentence of § 264(a) "informs the grant of authority by illustrating the kinds of measures that could be necessary." *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 763 (2021) (per curiam). It specifies that, in making and enforcing such regulations, the Secretary may provide for "such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." 42 U.S.C. § 264(a). These enumerated measures "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Alabama Ass'n of Realtors*, 594 U.S. at 763.[2]

---

[2] The statute originally assigned authority to the Surgeon General, but these statutory powers and functions were later transferred to the Secretary of Health, Education, and Welfare, now the HHS Secretary. *See Reorganization Plan No. 3 of 1966*, 31 Fed. Reg. 8855 (June 25, 1966), *reprinted in* 80 Stat. 1610 (1966); *see also* 20 U.S.C. § 3508(b).

Pursuant to delegations from the HHS Secretary, the authorities conferred by § 264 are exercised by the CDC and the Food and Drug Administration (FDA), which are divisions of HHS. *See, e.g.*, 42 C.F.R. § 70.2 (CDC regulations); 21 C.F.R. § 1240.30 (FDA regulations). The agencies have long taken actions pursuant to § 264 "prohibiting the import or sale of animals known to transmit disease." *Alabama Ass'n of Realtors*, 594 U.S. at 761. For example, that authority has been used to ban the sale of small turtles because of the risk that small turtles could be infected with salmonella. *See Ban on Sale and Distribution of Small Turtles*, 40 Fed. Reg. 22,543 (May 23, 1975); *Louisiana v. Mathews*, 427 F. Supp. 174, 175-76 (E.D. La. 1977) (upholding exercise of authority). Similarly, that authority has been used to prohibit the capture, distribution, or release of certain animals to prevent the spread of monkeypox. *See Control of Communicable Diseases; Restrictions on African Rodents, Prairie Dogs, and Certain Other Animals*, 68 Fed. Reg. 62,353 (Nov. 4, 2003).

**B.     The CDC's Canine Rabies Rule**

1. This case concerns the CDC's regulatory requirements for dogs arriving from other countries to prevent the reintroduction and spread of canine rabies in the United States. "The rabies virus can infect any mammal" and can be transmitted from an infected dog "to humans, domestic pets, livestock, or wildlife." *Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats*, 89 Fed. Reg. 41,726, 41,726 (May 13, 2024). Rabies is considered "one of the deadliest" infectious diseases. *Id.* at 41,754. Because there is no effective treatment "once clinical signs

3

appear, the disease is almost always fatal" in infected people, with a "near 100% mortality." *Id.*

To combat canine rabies, federal regulations have governed the entry of dogs into the United States since at least 1956. *See Revision of Chapter*, 21 Fed. Reg. 9805, 9879 (Dec. 12, 1956). The CDC revised the pertinent regulation, 42 C.F.R. § 71.51, in 1985. *See Foreign Quarantine*, 50 Fed. Reg. 1516 (Jan. 11, 1985). Under that version, for a dog to be admitted into the country for non-research purposes, the owner was generally required to submit a certificate signed by a licensed veterinarian indicating that the dog had a non-expired rabies vaccination administered at least 30 days earlier and when the dog was at least three months old. *See* 42 C.F.R. § 71.51(a) (1985). The certificate was unnecessary if the owner could prove that the dog had been only in rabies-free countries for "the 6 months before arrival" (or for the dog's entire life if the dog was "less than 6 months of age"). *Id.* § 71.51(c)(1)(i)-(ii) (1985).

Due in part to these and other efforts, the United States was declared free of canine rabies in 2007. 89 Fed. Reg. at 41,726. However, the threat of reintroducing the virus remains. *See id.* at 41,787 (noting that the country of Malaysia experienced the reintroduction of canine rabies after being declared rabies-free). Canine rabies is still present in "more than 100 countries" across the world. *Id.* at 41,754; *see also* CDC, *High-Risk Countries for Dog Rabies* (May 31, 2024), https://perma.cc/9RHH-K6FY (listing countries that "are considered high risk for importing dog rabies into the United States"). Statistics show that "rabies kills approximately 59,000 people,

4

mainly children, per year globally from dog bites." 89 Fed. Reg. at 41,754. An

estimated "1 million dogs are imported into the United States annually," with

approximately 100,000 dogs coming from high-risk countries. *Id.* As the CDC has

explained, "[t]he importation of just one dog infected with [rabies] risks

reintroduction of the virus into the United States." *Id.* at 41,736.

2. This case involves 2024 updates to the canine rabies regulation following

notice-and-comment rulemaking. These changes were prompted by a documented

"increase in instances of fraudulent rabies vaccination documents." 89 Fed. Reg. at

41,755. The CDC detailed multiple serious incidents between 2015 and 2021 in which

rabid dogs from high-risk countries were imported into the United States with

falsified documentation or inadequate vaccination. *See id.* at 41,755-56. In one

incident, the "animals exposed to the rabid dog during travel were quickly dispersed

across nine states, leading to what is believed to be the largest, multi-state, imported

rabid dog investigation in U.S. history." *Id.* at 41,756. Relying on § 264 as the

"primary legal authority," *id.* at 41,737, the CDC determined that additional

protections were necessary to prevent the introduction and spread of canine rabies, *see*

*id.* at 41,758. One new regulatory requirement is directly at issue here.

The Canine Rabies Rule provides that "[a]ll dogs presented for admission into

the United States must be at least six (6) months old at the time of their arrival."

42 C.F.R. § 71.51(f)(1). As the CDC explained, this age requirement facilitates an

inspector's mandatory visual inspection of dogs for signs of rabies. *See id.* § 71.51(i)(1)

("All animals arriving at a U.S. port shall be inspected upon arrival . . . ."). Accurate identification is important because "puppies are susceptible to rabies and rabies has been diagnosed in young puppies." 89 Fed. Reg. at 41,766. But "[s]creening for rabies can be difficult in puppies" because they often exhibit one of the behaviors symptomatic of rabies—"uncoordinated" or "awkward movements"—as part of "normal growth and development." *Id.*

In addition, there are challenges "to accurately assess[ing] the age of dogs" before they reach six months, which in turn affects the ability to confirm that a dog was not "too young to be effectively vaccinated against rabies" when it received the vaccine. 89 Fed. Reg. at 41,765-66, 41,768. The CDC determined that setting the age at six months would help ensure that "dogs are fully, effectively, and verifiably vaccinated." *Id.* at 41,766. The CDC further noted that the age requirement "helps ensure that dogs are less stressed during international travel and arrive in a healthier state," thereby reducing the need to conduct a public health investigation if "a dog becomes ill or dies during international travel." *Id.* at 41,788.

The CDC also emphasized that a six-month minimum age requirement would harmonize the Canine Rabies Rule with other legal obligations. The CDC simultaneously required a blood test—which, in the agency's experience, is less susceptible to falsification—to detect immune response for dogs vaccinated against rabies in high-risk foreign countries. 89 Fed. Reg. at 41,740. Based on the agency's scientific judgment, a reliable blood test cannot be completed and verified before six

months of age because the vaccine does not become effective until a dog is at least four months old and a two-month waiting period accounts for the virus's lengthy and variable incubation period. *Id.* at 41,765. In this respect, the Rule "is *less* burdensome than [certain intergovernmental organization] standards," which extend the waiting period for an extra month, in order to "provide additional flexibility and less burden to importers without compromising public health goals." *Id.* at 41,759, 41,765. And the CDC explained that the age requirement uses the same age cutoff as certain U.S. Department of Agriculture (USDA) "requirements for commercial dog imports under the Animal Welfare Act." *Id.* at 41,727.

In adopting the age requirement, the CDC considered and rejected an exception to permit annual imports of "up to three" personal pet dogs "under six months of age" if the dogs arrived from Canada or Mexico and had not been in a high-risk country since birth. 89 Fed. Reg. at 41,739. The CDC recorded "numerous instances" of dogs under six months of age "being routed from . . . high-risk countries through [rabies]-free countries, such as Canada or Mexico, to circumvent U.S. entry requirements." *Id.* at 41,766. Rather than introducing an exception that would necessitate an individualized evaluation into the legitimacy of each claim about a dog's previous whereabouts and that could invite opportunities to circumvent the Canine Rabies Rule, the CDC opted in favor of "a standardized age for all dogs" that would deter fraud and promote public health. *Id.*

## C.    Prior Proceedings

Plaintiffs are rescue organizations that wish to transfer dogs under six months of age from the Caribbean islands to the United States.  *See* App. 153-58.  Plaintiffs brought this lawsuit contending that the Canine Rabies Rule exceeds the CDC's statutory authority and is arbitrary and capricious.  *See* App. 169-70.  On the parties' cross-motions for summary judgment, the district court granted judgment in favor of the government.  *See* Add. 15.

As the district court explained, § 264(a) authorizes the CDC to adopt measures "directly relate[d] to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself."  Add. 10 (quoting *Alabama Ass'n of Realtors*, 594 U.S. at 763).  The court reasoned that "the six-month age requirement is directly related to preventing the spread of rabies" because it "facilitate[s]" reliable inspections of "dogs entering the United States."  Add. 10-11.  The requirement "makes it easier" to "identify a rabid dog" during an inspection and to "ensure [the dog's] tests for rabies immunity are accurate."  Add. 10-11.  The court further noted that the Rule is "in line with other regulations promulgated pursuant to § 264(a)," including the prior iteration of the CDC's regulations that "imposed an age requirement upon dogs imported from rabies high-risk countries."  Add. 11.

The district court also determined that the Rule was reasonable and reasonably explained.  The court highlighted that "dogs older than six months are easier to inspect for rabies."  Add. 13.  The court explained that detecting infected dogs before

8

they enter the country is important "given the substantial risk posed by the introduction of just one rabid dog into the country." Add. 14. The court held that the CDC was justified in applying the age requirement to all countries in light of "the underlying evidence of vaccination fraud" and "the incentive that would exist to divert dogs from high-risk countries through low-risk or rabies-free countries if those countries were subject to different age restrictions for dog imports." Add. 13-14. And the court observed that the decision to set six months as the appropriate cutoff reflected "an effort to strike a balance with the needs of importers" while protecting public health. Add. 15.

## SUMMARY OF ARGUMENT

To prevent the reintroduction and spread of rabies in the United States, the CDC made incremental updates to its longstanding regulatory requirements for dogs arriving from other countries. In the Canine Rabies Rule, the CDC adopted an age requirement to enable inspectors to more accurately identify dogs infected with rabies and, where necessary, to verify that dogs are adequately vaccinated against rabies. The district court properly rejected plaintiffs' challenges to this public-health requirement, as the Sixth Circuit recently did in a materially similar case. *See U.S. Sportsmen's All. Found. v. CDC*, --- F.4th ---, No. 25-1473, 2026 WL 412318 (6th Cir. Feb. 13, 2026).

As the district court explained, the CDC acted well within its statutory authority in promulgating the Canine Rabies Rule. The age requirement increases the likelihood that border agents performing mandatory inspections can catch rabid dogs

9

before they enter the country.  The challenged requirement "directly relate[s]" to "identifying" and "isolating" canine rabies, *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 763 (2021) (per curiam), and plainly constitutes a permissible "inspection" or "other measure[]" that "in [the CDC's] judgment" is "necessary to prevent the introduction, transmission, or spread of communicable diseases," 42 U.S.C. § 264(a).

The district court also correctly held that the decision to issue the Canine Rabies Rule was fully explained and supported.  The CDC promulgated the Rule, in part, to identify and deter fraud that could result in rabid dogs entering the country. The CDC documented many instances in which importers engaged in behavior designed to circumvent requirements for dog importation.  As the Rule makes clear, and as plaintiffs do not dispute, the mandatory visual inspections of all dogs entering the country are more effective at uncovering rabies when dogs are at least six months old.  Contrary to plaintiffs' argument, the CDC was not obligated to wait for direct evidence implicating the Caribbean islands before acting.  Plaintiffs fail to overcome the agency's reasonable explanation and considered judgment that the age requirement was an appropriate response to a substantiated public-health threat.

## STANDARD OF REVIEW

This Court reviews de novo the district court's grant of summary judgment. *See Alam & Sarker, LLC v. United States*, 113 F.4th 153, 161 (1st Cir. 2024).  The challenged regulatory requirement may not be set aside unless it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law" or is "in excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. § 706(2)(A), (C).

## ARGUMENT

### I.  The CDC Has Statutory Authority to Issue the Canine Rabies Rule

#### A.  Section 264(a) Expressly Authorizes Inspection Measures, and the Age Requirement Facilitates Accurate Inspections

The Canine Rabies Rule falls easily within the CDC's statutory authority, which, the Supreme Court has explained, includes measures that "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 763 (2021) (per curiam).  That is precisely what the challenged provision of the Rule does: the age requirement helps identify dogs infected with rabies so that they do not enter the country and spread the virus to humans and other animals.  *See* Add. 10-11; *see also U.S. Sportsmen's All. Found. v. CDC*, --- F.4th ---, No. 25-1473, 2026 WL 412318, at *4 (6th Cir. Feb. 13, 2026); *Royal Potcake Rescue v. CDC*, No. 24-cv-1909, 2025 WL 2780335, at *7-10 (M.D. Fla. Sep. 30, 2025), *appeal pending*, No. 25-14172 (11th Cir.).

The Public Health Service Act authorizes the CDC to "make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession."  42 U.S.C. § 264(a).  The next sentence of § 264(a) "informs the grant of

authority by illustrating the kinds of measures that could be necessary." *Alabama Ass'n of Realtors*, 594 U.S. at 763. In particular, the CDC "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [its] judgment may be necessary." 42 U.S.C. § 264(a). By its express terms, § 264(a) encompasses "inspection" measures and "other measures" akin to the enumerated measures. *See Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 5 F.4th 666, 671 (6th Cir. 2021) (holding that § 264(a) permits "measures that are similar to inspection, fumigation, destruction of animals, and the like").

The age requirement is an archetypal inspection measure, as it facilitates the identification and isolation of rabid dogs. Because dogs younger than six months exhibit uncoordinated movements that could be misinterpreted as normal puppy behavior rather than an indicator of rabies, inspectors can more accurately identify the signs of rabies after six months of age. *See* 89 Fed. Reg. at 41,766. The age requirement also enables the agency to confirm that a dog was not vaccinated against rabies at such a young age that it did not acquire immunity. *See id.* at 41,765. As the Sixth Circuit recently summarized, "the minimum age requirement made it easier to spot potentially rabid dogs before they enter the country and ensure that rabies vaccinations were effective." *U.S. Sportsmen's All.*, 2026 WL 412318, at *6.

These activities easily satisfy the contemporaneous and modern definition of "inspection" as "[t]he act or process of looking into; especially, a careful critical investigation or scrutiny." *Inspection*, Funk & Wagnalls New Standard Dictionary of the English Language 1271 (1941); *see Inspect*, The American Heritage Dictionary of the English Language 908 (5th ed. 2018) (defining "inspect" as "[t]o examine carefully and critically, especially for flaws"); *cf. Acosta v. Local Union 26, UNITE HERE*, 895 F.3d 141, 144 (1st Cir. 2018) (defining "inspect" as "to look upon; to view closely and critically, esp. so as to ascertain quality or state, to detect errors, etc.; to scrutinize" (alteration and quotation marks omitted)).  Applying these definitions, the Sixth Circuit affirmed the denial of a request to preliminarily enjoin enforcement of the age requirement.  *U.S. Sportsmen's All.*, 2026 WL 412318, at *1.  The Sixth Circuit reasoned that the age requirement is "likely statutorily authorized" because it is a "way to ascertain the quality or condition of the dogs" and identify if a dog is "potentially rabid."  *Id.* at *4.

Furthermore, the age requirement is comparable to (or more modest than) the measures enumerated in § 264(a) and is thus among the "other measures" authorized by § 264(a)'s second sentence.  *See* Add. 11.  While § 264(a) allows for "destruction of animals . . . found to be so infected . . . as to be sources of dangerous infection to human beings," the Canine Rabies Rule contemplates the less drastic measure of limiting entry when dogs cannot be as effectively examined for rabies.  The Sixth Circuit explained that the age requirement is similar to the other listed measures

13

because "it is another way of preventing rabid dogs from getting into the country." *U.S. Sportsmen's All.*, 2026 WL 412318, at *4.

As the district court observed, the challenged requirement accords "with other regulations promulgated pursuant to § 264(a)." Add. 11. For decades, § 264(a) has been used generally to control the spread of disease by animals and specifically to limit the entry of animals into the United States for that purpose. In 1975, the FDA banned the sale of small turtles, which are known to be carriers of salmonella. *See* 40 Fed. Reg. 22,543. The Supreme Court relied on this example in recognizing that the § 264(a) authority has long been used to "prohibit[] the import or sale of animals known to transmit disease." *Alabama Ass'n of Realtors*, 594 U.S. at 761. The government's rabies regulations have been in place even longer, since at least 1956. *See* 21 Fed. Reg. at 9879. The CDC updated those regulations in 1985, including by imposing an age restriction for dogs imported from high-risk countries because those dogs needed a vaccination certificate but could not receive one until four months old. *See* 42 C.F.R. § 71.51(a), (c) (1985). The Canine Rabies Rule reflects a routine exercise of that same statutory authority to make materially similar incremental changes in light of current public-health dangers.

### B. Plaintiffs' Counterarguments Are Contrary to § 264(a)'s Plain Text and Longstanding Agency Practice

Plaintiffs barely engage with the text of § 264(a). *See* Pls. Br. 21-23. They offer no competing definition of "inspection" that would exclude the age requirement.

They do not meaningfully dispute that the CDC can adopt measures "to 'facilitate' the reliability of [a] visual inspection." *See* Pls. Br. 26; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 192-93 (2012) ("[I]t has long been held that whenever a power is given by a statute, everything necessary to making it effectual or requisite to attaining the end is implied." (quotation marks omitted)). And they accept that, under the Supreme Court's interpretation of § 264(a), the CDC may promulgate "inspection requirement[s]" for the "purpose of 'identifying, isolating, and destroying' a communicable disease" like canine rabies. Pls. Br. 22-23 (quoting *Alabama Ass'n of Realtors*, 594 U.S. at 763).

Instead, plaintiffs appear to assert that the CDC's statutory authority to regulate as to any given country hinges on the then-current prevalence of rabies within that country. *See* Pls. Br. 23-26. That approach is unsupported and unsound. As an initial matter, it is not true, as plaintiffs suggest, that a dog arriving "from a foreign country that the CDC has declared to be rabies-free will *definitely not* be infected with rabies." Pls. Br. 23. As the agency explained, countries may experience the reintroduction of canine rabies after being declared rabies-free, as happened in Malaysia. *See* 89 Fed. Reg. at 41,800 (noting that Malaysia has been unable to re-eliminate dog rabies after it was reintroduced in 2017 and that 45 people died from infection between 2017 and 2022). By the time that a country's declared status is updated, infections may be spreading to other countries undetected.

More fundamentally, § 264 authorizes the CDC to impose "inspection" and "other measures" that "in [the agency's] judgment" are "necessary to prevent the introduction, transmission, or spread of communicable diseases." 42 U.S.C. § 264(a). The age requirement neatly fits that description. Without such a requirement, mandatory inspections would be less effective at catching rabid dogs before they enter the country. *See* 89 Fed. Reg. at 41,727. And if rabies-free countries were exempted, importers could bring in dogs from high-risk countries simply by stopping over in a rabies-free country and then lying about the dog's origin. *See id.* at 41,766. Plaintiffs' suggestion that the CDC must settle for easily evaded piecemeal actions finds no purchase in the statutory text and defies common sense.

The bulk of plaintiffs' other statutory arguments are similarly misdirected. They repeatedly seek to recast "arbitrary-and-capricious" challenges to the way in which the CDC "exercise[d] discretion granted by [the] statute" as challenges to the scope of the CDC's statutory authority. *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 179-80 (2025). For example, plaintiffs proclaim that the likelihood of reintroducing rabies is sufficiently low as to rabies-free countries because, in their view, dogs arriving from such countries "will *definitely not* be infected with rabies" and "scanning the dog's subcutaneous microchip" already provides adequate protection. Pls. Br. 23-25. But plaintiffs' own weighing of the dangers is not what matters. At multiple places, § 264(a) makes clear that "judgment[s]" about what measures are

16

"necessary" belong to the CDC. The agency does not exceed its authority just because plaintiffs would tolerate a greater degree of risk.

Plaintiffs' position that the CDC must have country-specific evidence of past entry of infected animals in order to apply conditions to animals entering from that country, *see* Pls. Br. 25, 30, would disable the CDC from taking important prophylactic actions. The CDC, however, need not wait until after rabies has been reestablished before taking action. To the contrary, the statute explicitly authorizes measures "to *prevent*" the "*introduction*" or "spread" of communicable disease. 42 U.S.C. § 264(a) (emphases added). Taking preventative measures is part of the CDC's core mission. It is embodied in the name of the agency—Centers for Disease Control *and Prevention*. *See* Pub. L. No. 102-531, § 312, 106 Stat. 3469, 3504 (1992) (amending the agency's official name to add the words "and Prevention").

Unsurprisingly, many CDC and FDA measures issued pursuant to § 264(a) are preventative in nature. For example, the 1975 ban on turtle sales that the Supreme Court cited with approval in *Alabama Ass'n of Realtors*, 594 U.S. at 761, was a blanket ban on the sale of small turtles (healthy and infected alike) based on the risk that any small turtle could be infected with salmonella. *See* 40 Fed. Reg. 22,543; *Louisiana v. Mathews*, 427 F. Supp. 174, 175-76 (E.D. La. 1977) (rejecting the plaintiffs' claim that only infected turtles may be banned). Likewise, the CDC and the FDA have prohibited the sale of animals from species associated with monkeypox, regardless of whether a particular animal is infected. *See* 68 Fed. Reg. 62,353.

Other examples abound.  Pertinent regulations require that perishable food or drink on interstate conveyances be stored at or below 50 degrees, 21 C.F.R. § 1250.27; impose detailed obligations to prevent salmonella in eggs, *id.* pt. 118; and specify requirements for current good manufacturing practices and other criteria for blood and blood components, *id.* pts. 606, 630.  Similarly, regulations issued under § 264(a) authorize "prevention measures" to detect the presence of communicable disease at transportation hubs.  42 C.F.R. § 70.10.  And the FDA has long required that all milk products distributed in interstate commerce and intended for human consumption be pasteurized because they may contain pathogenic bacteria, even though not all raw milk products are contaminated.  *See Requirements Affecting Raw Milk for Human Consumption in Interstate Commerce*, 52 Fed. Reg. 29,509 (Aug. 10, 1987); *McAfee v. U.S. FDA*, 36 F.4th 272 (D.C. Cir. 2022) (rejecting argument that raw butter should be excluded from the pasteurization requirement).  Plaintiffs provide no reason to think that Congress would have precluded the agencies from incorporating preventative measures in the actions they undertake.

As noted above, the age requirement is an incremental update to rabies regulations dating back to the 1950s.  *See Alabama Ass'n of Realtors*, 594 U.S. at 761 (recognizing that § 264(a) is the basis for regulations "prohibiting the import or sale of animals known to transmit disease").  Plaintiffs insist that the age requirement should be understood as an "entry ban" or "import prohibition" rather than as a permissible "condition of entry."  Pls. Br. 21, 24-25.  But it is unclear what significance plaintiffs

attach to that distinction, as the application of any condition for entry (such as proof of vaccination or the microchip requirement that plaintiffs do not challenge) will necessarily deny entry to animals that do not satisfy the condition. Thus, the age requirement is itself merely a condition upon entry. In fact, the 1985 regulation had a de facto age restriction for dogs imported from high-risk countries because those dogs needed a vaccination certificate but could not receive one until four months old. *See* Add. 11 (citing 42 C.F.R. § 71.51(a), (c) (1985)).

Lacking any foothold in § 264(a)'s language, plaintiffs attempt to cabin the CDC's authority by reference to another statute. *See* Pls. Br. 25-26. In particular, plaintiffs point to § 265, which allows the CDC "to prohibit, in whole or in part, the introduction of persons and property" from foreign countries "for such period of time" as necessary to avert the "serious danger of the introduction of [a communicable] disease into the United States." 42 U.S.C. § 265. During the COVID-19 pandemic, the CDC relied on this authority to temporarily suspend the entry of certain noncitizens into the United States from Canada or Mexico, *see Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists*, 85 Fed. Reg. 17,060 (Mar. 26, 2020), and to temporarily suspend the entry of dogs from high-risk countries, *see Temporary Suspension of Dogs Entering the United States From High-Risk Rabies Countries*, 86 Fed. Reg. 32,041 (June 16, 2021).

Sections 264(a) and 265 authorize different facets of action that the CDC may take to prevent the spread of communicable diseases into the country, and the CDC's interpretation "giv[es] effect to" both statutes. *Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024). Whereas § 264(a) permits measures that prevent introduction or spread by identifying and isolating the disease, § 265 permits country- or place-specific prohibitions on the introduction of persons or property without regard to whether the prohibition makes the disease easier to detect. *See U.S. Sportsmen's All.*, 2026 WL 412318, at *5 (rejecting the argument that § 265 "separately bar[s]" the Canine Rabies Rule). The existence of separate authority under § 265 does not call into question the CDC's authority to adopt measures that fall within the express terms of § 264(a). *See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001) (noting that the Supreme Court "has not hesitated to give effect to two statutes that overlap, so long as each reaches some distinct cases"). These provisions are mutually reinforcing, and plaintiffs' attempt to pit them against each other is unavailing.[3]

---

[3] Because the Canine Rabies Rule is a valid exercise of the CDC's authority under § 264(a), this Court need not address whether § 265 would independently authorize the Rule.

## II.     The CDC Fully Justified the Canine Rabies Rule

### A.     The CDC Reasonably Found That the Age Requirement Was Necessary to Prevent the Reintroduction and Spread of Canine Rabies

The CDC amply satisfied its obligation to "examine the relevant data and articulate a satisfactory explanation for" its judgment that the age requirement was necessary to prevent the reintroduction and spread of the deadly canine rabies virus in the United States. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Review under the arbitrary-and-capricious standard "is deferential," and a court's role is to "simply ensure[] that the agency has acted within a zone of reasonableness." *Federal Comm'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). As the Sixth Circuit recently recognized in a similar challenge to the age requirement, it was "reasonable for the CDC to have drawn the conclusions it did on this record." *U.S. Sportsmen's All.*, 2026 WL 412318, at *6.

1. The CDC observed that its regulations governing dog imports "ha[d] not been substantively updated in decades." 89 Fed. Reg. at 41,758. The revisions in the Canine Rabies Rule were motivated in part by the significant changes in the landscape over the intervening years, including the sharp increase in the number of dogs being shipped internationally for resale and adoption, and the concomitant rise in fraud. *See id.* at 41,755. The CDC documented numerous instances "of young dogs under six months of age being routed from . . . high-risk countries through [rabies]-free countries, such as Canada or Mexico, to circumvent U.S. entry requirements," *id.* at

41,766, and "of importers attempting to import an unvaccinated dog using the vaccination paperwork for another dog," *id.* at 41,767. These fraudulent behaviors threatened to reintroduce canine rabies into the United States.

Those risks were not theoretical, as the CDC had already seen several incidents between 2015 and 2021 in which rabid dogs from high-risk countries were imported into the United States based on falsified documentation. *See* 89 Fed. Reg. at 41,755-56. In one incident, the effects were particularly widespread because the other animals in the shipment with the rabid dog "were quickly dispersed across nine states" before the dog developed signs of rabies. *Id.* at 41,756. Although all of those infections were ultimately contained, they required significant investments of resources to treat and monitor any person or animal who came into contact with the infected dog. *See id.* at 41,755-56. The stakes remain high because the United States continues to import a large number of dogs each year, *id.* at 41,754, and "[t]he importation of just one dog infected with [rabies] risks reintroduction of the virus into the United States," *id.* at 41,736. The consequences of an outbreak would be severe, as rabies is "almost always fatal" once "clinical signs appear." *Id.* at 41,754.

2. Against that backdrop, the CDC detailed its rationales for imposing a six-month minimum age requirement on all dog imports. *See* Add. 13-14. As the agency explained, a dog must be six months old for a visual inspection to reliably detect signs of rabies. Puppies are particularly "susceptible to rabies." 89 Fed. Reg. at 41,766. One common sign of rabies is awkward or uncoordinated movement. *See id.* Puppies

22

younger than six months, however, often exhibit these kinds of movements "as part of their normal growth and development," even when they do not have rabies. *Id.* Absent the age requirement, inspectors would be unable to tell if a dog with erratic movements is a threat to public health or just an uncoordinated puppy. *See id.*

In practice, inspections are conducted by customs officers or agricultural specialists who receive training from the CDC. *See* 89 Fed. Reg. at 41,735, 41,737, 41,769. In addition to looking for dogs that display uncoordinated movement or other symptoms of rabies, *see id.* at 41,766, agents may observe signs that the dog is ill or indications that the importer is suspicious. Where there is cause for concern, the agent can continue the inspection in a secondary screening area and can contact one of the various CDC port health stations located at busy ports of entry across the country. *See id.* at 41,753. These stations are staffed with medical, veterinary, and public-health officers who can perform any necessary follow-up, such as scanning a dog's microchip. *See id.* at 41,779. Thus, the age requirement is a tool that "makes it easier" for inspectors to spot a dog that may have rabies and to take further steps to dispel these suspicions before the dog is able to enter the country. Add. 10.

At the same time, the CDC adopted a canine blood test—which the agency used during the COVID-19 pandemic and found to be less vulnerable to fraud than vaccine certificates—to confirm rabies vaccinations for dogs that were vaccinated in high-risk foreign countries. 89 Fed. Reg. at 41,727, 41,740. In the agency's scientific judgment, that test cannot reliably determine whether a dog has been adequately

vaccinated for rabies until a dog is six months old.  *Id.* at 41,746.  Dogs can receive

the vaccine at three months, and the vaccine usually becomes effective one month

later, but an additional waiting period is necessary for authorities to confirm the

presence of antibodies due to the virus's lengthy and variable incubation period.  *Id.* at

41,765.  Though some scientific communities recommend waiting until a dog is seven

months old before importing, the CDC reviewed the scientific evidence and settled

on six months to "provide additional flexibility and less burden to importers without

compromising public health goals."  *Id.*

Additional reasons support six months as an appropriate cutoff.  The CDC

identified challenges in "assess[ing] the age of dogs" before they reach six months,

which is important because veterinarians must be able to confirm that a dog was "old

enough" when it received the rabies vaccine "to have been adequately vaccinated."

89 Fed. Reg. at 41,765-66.  The age requirement further protects "the dog during

international travel" because older dogs are better equipped to handle stresses like

"long travel times" and "temperature fluctuations," and thus reduces the need to

conduct a mandatory public health investigation when "a dog becomes ill or dies

during international travel."  *Id.* at 41,788-89.  And the CDC described the added

benefit of adopting the same six-month age cutoff as in USDA regulations under the

Animal Welfare Act.  *See id.* at 41,766; *see also* 9 C.F.R. pt. 2.  This harmonization

removed an incentive for commercial importers to misrepresent the reason why

puppies are being imported or to engage in deception regarding the health histories of

these dogs.  *See* 89 Fed. Reg. at 41,760 (discussing how "differentiating between commercial dog importations and dogs imported as personal pets is operationally impracticable and increases opportunities for fraud").

The CDC also considered and rejected an exception to permit annual imports of "up to three" personal pet dogs "under six months of age" if the dogs arrived from Canada or Mexico and had not been in a high-risk country since birth.  89 Fed. Reg. at 41,739-40.  Citing examples where importers transferred dogs from high-risk countries to Canada or Mexico and then made claims at the U.S. border that the dogs had not been in a high-risk country for the past six months, the agency determined that such an exception "potentially creates a loophole for unscrupulous importers to exploit."  *Id.* at 41,766.  The CDC therefore declined to adopt the proposed exception that could invite opportunities for circumvention and chose a uniform age requirement that would promote public health.  *Id.*

## B. Plaintiffs' Counterarguments Disregard Important Aspects of the CDC's Reasoned Decision

Plaintiffs largely ignore the CDC's articulated justifications.  For example, plaintiffs do not dispute that one behavior associated with rabies—uncoordinated movements—is also common in puppies or that inspectors have no reliable way of telling the two apart.  *See* 89 Fed. Reg. at 41,766.  Plaintiffs' arguments thus cast no doubt on the agency's rational conclusion that the age requirement reduces the risk that a busy inspector might wrongfully dismiss uncoordinated movements as normal

puppy behavior and accidentally permit a rabid dog to enter the country. *See id.* (noting that "puppies are susceptible to rabies" and that "the rabies vaccine is not considered effective in" young dogs). Plaintiffs' remaining arbitrary-and-capricious arguments suffer similar flaws.

Plaintiffs primarily object to the CDC's decision to apply the age requirement to all dog imports. Plaintiffs question whether, for dogs entering from low-risk and rabies-free countries, the age requirement is necessary to prevent the reintroduction and spread of rabies. *See* Pls. Br. 28-32. According to plaintiffs, low-risk and rabies-free countries must be excused from that requirement because the CDC has not observed rabies in dogs coming from those countries. *See* Pls. Br. 30. These contentions fail to account for the CDC's specific consideration of this issue and detailed rationale for declining to create the patchwork that plaintiffs desire.

As the CDC described, the age requirement continues to serve an important function even as to low-risk and rabies-free countries. In the CDC's experience, importers have been known to lie about whether dogs have been in a high-risk country. *See* 89 Fed. Reg. at 41,766 (discussing the "numerous instances in which importers transported dogs" from a high-risk country to a rabies-free country but "then made claims that their dogs had not been in a" high-risk country). To address this possibility, all dogs—including those coming from low-risk or rabies-free countries—are subject to inspections, and the age requirement makes those inspections more effective by increasing the likelihood of detection and by allowing

26

follow up when an inspection reveals abnormal circumstances. *See* Add. 10-11. In other words, the age requirement can help intercept importers who try to sneak dogs from high-risk countries through low-risk or rabies-free countries to avoid detection.

Furthermore, the CDC highlighted the concerns with subjecting different countries to different age restrictions. Such a regime, the CDC explained, could open "a loophole for unscrupulous importers to exploit." 89 Fed. Reg. at 41,766. That risk rested on more than "pure speculation," Pls. Br. 34; the agency documented previous successful and attempted efforts by importers to launder dogs from high-risk countries through rabies-free countries "to circumvent CDC requirements for dog importation." 89 Fed. Reg. at 41,753; *see also id.* at 41,756 & n.105 (discussing 2019 incident where rabid dog from Egypt passed through Canada before entering the United States). Given the agency's goal to forestall such evasive maneuvers, as well as the severe and far-reaching impact if even "just one rabid dog" were imported, the CDC acted well within the zone of reasonableness in adopting a standardized age requirement. Add. 14; *see also U.S. Sportsmen's All.*, 2026 WL 412318, at *6 ("It was acceptable for the CDC to regulate across the global board rather than target only high-risk areas.").

Plaintiffs make no headway in noting that the CDC does not require that dogs entering from rabies-free countries "be vaccinated against rabies" or be accompanied by "rabies vaccination paperwork." Pls. Br. 31. Although plaintiffs suggest that those choices are irrational, *see* Pls. Br. 31-32, they reflect the agency's general "confidence

in [rabies]-free and low-risk countries which demonstrate adequate surveillance capacity and vaccination control measures," 89 Fed. Reg. at 41,739. Nevertheless, the CDC reasonably determined not to rely exclusively on these countries' safeguards, particularly given the extensive evidence of fraud in dog imports. *See* Add. 13-14. The CDC adopted the age requirement as an additional check to guard against misrepresentations by importers that threaten to conceal dogs infected with rabies and lead to negative public-health outcomes. *See* 89 Fed. Reg. at 41,726-28.

It is not enough for plaintiffs to declare that the regulation may be "overbroad" in certain respects, Pls. Br. 30, or that "more narrowly tailored" options were available, Pls. Br. 28. The proper focus is on whether the agency considered the relevant factors and offered "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quotation marks omitted). Under that standard, agencies have significant latitude to determine how to tackle a problem, and the question is not whether the agency's approach "is the best one possible or even whether it is better than the alternatives." *Federal Energy Regul. Comm'n v. Electric Power Supply Ass'n*, 577 U.S. 260, 292 (2016); *see also U.S. Sportsmen's All.*, 2026 WL 412318, at *6 (explaining that, in conducting arbitrary-and-capricious review, courts "do not micromanage agencies by testing regulations for over- or under-inclusiveness"). And here, the CDC's decision to adopt the age requirement was supported by reasoned decisionmaking and grounded in the evidence.

The administrative record belies plaintiffs' assertion that the Canine Rabies Rule "invent[ed] or hypothesiz[ed] a problem that does not exist." Pls. Br. 28. The CDC thoroughly recounted its prior experience with falsified documents and other misrepresentations, including where rabid dogs were able to gain entry. *See* 89 Fed. Reg. at 41,755-56. Plaintiffs dismiss these prior incidents because they did not "involve[] dogs arriving from," or otherwise have some "connect[ion] . . . with," the Caribbean islands. Pls. Br. 31, 33-34. But the APA does not impose such a rigid evidentiary requirement. Courts uphold agency actions where the agency made a "reasonable predictive judgment based on the evidence it had." *Prometheus Radio Project*, 592 U.S. at 427. Plaintiffs' claim that the CDC must adduce evidence specifically linked to the Caribbean islands also clashes with the principle that "agencies can, of course, adopt prophylactic rules to prevent potential problems before they arise." *Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009). Doing so is especially reasonable where the risks to public health—here, the possible reintroduction of an incurable and highly lethal disease—are so severe.

For many of the same reasons, the decision in *National Fuel Gas Supply Corp. v. Federal Energy Regulatory Commission*, 468 F.3d 831 (D.C. Cir. 2006), does not advance plaintiffs' case. *See* Pls. Br. 28, 32-34. There, the court held that an agency failed to substantiate its claim that a "record of abuse" justified extending certain regulatory standards to a new class of entities when the agency cited not "a single example of abuse" by the newly covered entities. *National Fuel*, 468 F.3d at 841; *see id.* at 843

29

("[The agency] staked its rationale in part on a record of abuse, but that record is non-existent."). Here, by contrast, substantial evidence demonstrated an ongoing problem with the fraudulent routing of dogs from high-risk countries through low-risk or rabies-free countries, and those concerns are no different in kind for the Caribbean islands. Nothing in the fact-bound holding of *National Fuel* compels the CDC to wait for direct evidence implicating the Caribbean islands before acting. *See Stilwell*, 569 F.3d at 519 ("An agency need not suffer the flood before building the levee.").

Plaintiffs are also wrong to suggest that they had legitimate reliance interests in the CDC maintaining its prior regulations. *See* Pls. Br. 27-28. Plaintiffs cite inapposite cases in which an agency "rescind[ed] a prior policy," *Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020), or promulgated a regulation "inconsistent with the [agency's] longstanding earlier position," *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016). This case does not involve any comparable reversal of course on an established agency position. Rather, the CDC merely updated its regulatory requirements on dog imports in response to public-health developments, and those incremental changes do not in any way contradict past agency views or practices.

In any event, in deciding to apply the age requirement to low-risk and rabies-free countries, the CDC exhibited the precise sort of "awareness" and "sensitivity" about the effects of the change that plaintiffs say is required. Pls. Br. 27. Notably, the CDC offered opportunity for public comment and was cognizant that the Canine

Rabies Rule would impose a "burden [on] importers." 89 Fed. Reg. at 41,765. The agency endeavored to find ways to make the age requirement "less burdensome," *id.* at 41,759 (emphasis omitted), and to "provide additional flexibility" to importers "without compromising public health goals," *id.* at 41,765. The CDC therefore "adopt[ed] a six-month age requirement" supported by scientific literature "rather than the seven-month requirement" recommended by certain scientific communities "to strike a balance with the needs of importers." Add. 15. In short, the CDC fully complied with any obligation to "provide a reasoned explanation for the change" in revising its regulations to address new public-health dangers. *Encino Motorcars*, 579 U.S. at 221.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

LEAH B. FOLEY
*United States Attorney*

THOMAS PULHAM

*s/ Brian J. Springer*

BRIAN J. SPRINGER
*Attorneys, Appellate Staff*
*Civil Division, Room 7537*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-5446*
*brian.j.springer@usdoj.gov*

February 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,837 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brian J. Springer*
Brian J. Springer

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Brian J. Springer*
Brian J. Springer

**ADDENDUM**

# TABLE OF CONTENTS

42 U.S.C. § 264........................................................................................................A1

42 C.F.R. § 71.51 ....................................................................................................A1

**42 U.S.C. § 264**

**§ 264. Regulations to control communicable diseases**

**(a) Promulgation and enforcement by Surgeon General**

The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

. . .


**42 C.F.R. § 71.51**

**§ 71.51. Dogs and cats**

. . .

**(f) Age requirement for all dogs**

(1) All dogs presented for admission into the United States must be at least six (6) months old at the time of their arrival into the United States.

(2) Dogs arriving into the United States that are not at least six (6) months old at the time of their arrival shall be denied admission and returned to the country of departure pursuant to paragraph (v) of this section.

. . .